UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------X
ERIC SPRONZ,

                                        Plaintiff

                                                            Docket No.
            -against-                          23-cv-   (  )(  )


COUNTY OF SUFFOLK, SUFFOLK COUNTY EXECUTIVE
STEVEN BELLONE, in his official capacity only.
SUFFOLK COUNTY POLICE COMMISSIONER RODNEY K.
HARRISON, in his official capacity only, SUFFOLK
COUNTY COMMANDING OFFICER OF THE PISTOL LICENSING
BUREAU LIEUTENANT MICHAEL KOMOROWSKI, in his
official capacity only, SUFFOLK COUNTY POLICE
OFFICER KEVIN W USTENHOF, in his individual and
official capacity, SUFFOLK COUNTY POLICE
OFFICER/PISTOL LICENSING BUREAU POLICE OFFICER
DANIEL JUGAN, in his individual and official
capacity, JOHN AND JANE DOE NO. 1-10, in their
official and in their individual capacity.


                                        Defendants.
----------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
### FOR PRELIMINARY RELIEF

        For the reasons set forth in the attached Memorandum of Law,
Plaintiff respectfully pray           s  that This Honorable Court issue an
Order Mandating that the Suffolk County Police Department
reinstating t    he p istol l   icense o  f the p    laintiff   ; Mandating t    ha t the
Suffolk C   ount y Polic   e Department P   istol L   icense S   ectio  n be o  rdered
to return to the plaintiff all his firearms seized by the Suffolk
County Police Department; and further instruct Defendants preserve
and turn over records to Plaintiff supporting its unconstitutional
pattern a   nd p ractice o   f violatin  g the c  onstitutional right       s of
Plaintiff a   nd o  thers similarly situated; preliminarily Appoint a
Federal M  onitor  , togethe   r with a   ll ot  he r relief t    hat thi   s Honorable
Court deems just and appropriate


Dated  : Centr   al Islip, New York
              April 17, 2023


                        Yours  , etc.,


                THE LAW OFFICES OF  CORY H.  MORRIS
                      CORY H.  MORRIS,  ESQ.  (CM5225)

ii

# TABLE OF CONTENTS

Table of Cases ................................................................i

Introduction and Preliminary Statement ...................................... 1

The Standard of Review ........................................................ 5

Equitable relief .............................................................. 5

Legal Argument

I.   Defendants, individually and collectively, violated Plaintiff's
     Second Amendment rights evidenced by a policy ................. 7

II.  Plaintiff is entitled to immediate equitable relief in the return
     of his property, firearms, and ability to carry a firearm
     consistent the united states constitution............................... 11

Conclusion................................................................. 17

i

## TABLE OF CASES

### CASES

*Abrams v. United States*, 250 U.S. 616, 630-631, 40 S. Ct. 17, 63 L. Ed. 1173 (1919) ............................................................................................................ 3

*Amoco Production Co.* v. *Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ..................................................................................................... 6, 11

*Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir. 2004) ........................................................................................................... 4

*Bell v Burson*, 402 U.S. 535, 539 (1971) ......................................................... 9

*Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) .............. 9

*Board of Regents v. Roth*, 408 U. S. 564 (1972) .............................................. 10

*Caulfield* v. *Board of Education,* 583 F.2d 605 (2d Cir. 1978) ............................ 4

*District of Columbia v. Heller*, 554 U.S. 570, 581 (2008) ................................. 13

*Evans v. City of New York*, 308 F. Supp. 2d 316, 323 (S.D.N.Y. 2004) ................ 9

*Foundry Services, Inc.* v. *Beneflux Corp.,* 206 F.2d 214 (2d Cir. 1948 ................ 4

*Gary Plastic Packaging Corp.* v. *Merrill Lynch, Pierce, Fenner & Smith*, 756 F.2d 230, 236–37 (2d Cir.1985) ......................................................................... 1

*Granny Goose Foods, Inc.* v. *Teamsters,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ................................................................................................. 12

*GW v. CN*, 2022 N.Y. Slip Op 22392 (Monroe Sup. Ct. 2022) ............................ 3

*Hague v. Sedita*, 56 Misc.2d 203, 288 N.Y.S.2d 212........................................... 9

*Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983)............................ 9

*Irby Construction Company v. United States*, 290 F.2d 824 (Ct. Cl. 1961) ........... 3

*Lewis v. Cuomo*, No. 20-CV-6316 CJS (W.D.N.Y. Dec. 16, 2021) ...................... 4

*Los Angeles* v. *Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ................................................................................... 12

*Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ......... 10

*Matter of Gulotta v. Kelly*, 8 Misc.2d 721, 168 N.Y.S.2d 60 (1957)..................... 9

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ....................................... 7, 8

*Munaf* v. *Geren*, 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008) ........... 5, 11

ii

*Nat'l Rifle Ass'n of Am. v. Hochul,* No. 20-3187-CV, 2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021) ........................................................................................ 4

*New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S.Ct. 2111 (2022) .. 6, 7, 8, 10, 13, 14

*New York State Rifle & Pistol Association, Inc. v. City of New York*, No. 18-280 (U.S. Apr. 27, 2020) ............................................................................... 8, 15

*New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750, 755 (2d Cir. 1977) ........................................................... 4

*O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ...................................................................... 12

*People v. Rodriguez*, 2022 N.Y. Slip Op 22217 (NYC Sup. Ct. 2022) ............... 10

*Perry v. Sindermann*, 408 U. S. 593, 601 (1972) ........................................... 10

*Railroad Comm'n of Tex. v. Pullman Co.,* 312 U.S. 496 (1941) ....................... 12

*Schenk v. ProChoice Network of W. N.Y.*, 519 U.S. 357, 372 (1997) ................ 9

*Silvester v. Becerra*, 138 S. Ct. 945, 952 (2018) ............................................ 8

*Studebaker Corp. v. Gittlin*, 360 F.2d 692 (2d Cir. 1966) ................................ 4

*Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1358–59 (2d Cir. 1976) ................................................. 4

United States v. Hampton, No. CR 21-0306 JB (D.N.M. Sept. 2, 2022) ........... 5, 6

*United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) ....................................................................................... 15

*Weinberger v. Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) .................................................................... 6, 11

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ....................... 5, 11

## STATUTES

42 U.S.C. § 1983 ............................................................................... 3

## OTHER AUTHORITIES

1 Sir William Blackstone, Commentaries on The Laws Of England 144 (1753) .... 7

U.S. Const. amend. II ...................................................... 2, 6, 7, 10

1

### INTRODUCTION AND PRELIMINARY STATEMENT

The Plaintiff ERIC SPRONZ ("Plaintiff" or "Plaintiffs") brings this action seeking the immediate return of his firearms and reinstatement of his firearm license from defendants COUNTY OF SUFFOLK ("Suffolk"), SUFFOLK COUNTY EXECUTIVE STEVEN BELLONE ("Bellone"), SUFFOLK COUNTY POLICE COMMISSIONER RODNEY K.HARRISON ("Harrison"), SUFFOLKCOUNTY COMMANDING OFFICER OF THE PISTOL LICENSINGBUREAU LIEUTENANT MICHAEL KOMOROWSKI, ("Komorowski"), SUFFOLK COUNTY POLICE OFFICER KEVIN WUSTENHOF ("Wustenhof"), SUFFOLK COUNTY POLICE OFFICER/PISTOL LICENSING BUREAU POLICE OFFICER DANIEL JUGAN ("Jugan") and JOHN AND JANE DOE NO. 1-10 (collectively referred to herein as "Defendants") from continuing to maintain an illegal policy of disarming citizens and violating the Second Amendment under the guise of carrying a firearm out of class.

Accordingly, Plaintiff submits that this Honorable Court should immediately

1. Issuing an order to the Suffolk County Police Department reinstating the pistol license of the plaintiff ERIC SPRONZ;

2. Issuing an order that the Suffolk County PoliceDepartment Pistol License Section be ordered to return to the plaintiff all his firearms seized by the Suffolk County Police Department; and further

3. Issuing an order that the defendant SUFFOLK COUNTY and the SUFFOLK COUNTY POLICE DEPARTMENT turn over all written policies regarding suspension of pistol licenses, all documents related to this case including notes, memoranda, text messages, e-mails, inter-officei nstant messages, letters, investigative notes in "native format" ;

4. Issuing a provisional appointment of a Federal Monitor or Receiver to take and maintain control of Defendants Suffolk County Police Department Pistol Licensing Bureau; and further relief as to this court may seem just and proper.

2

Plaintiff is a professional, responsible for the delivery of controlled substances, who was issued a business carry license for a firearm on or about May 14, 2021, (see Eric Spronz Aff. ¶¶ 6-12, Exhibit 1; Ver. Comp. ¶¶ 4-38) who later had received a concealed carry license in November, 2022. *Id.*, see Exhibit 2. Plaintiff is not a gun enthusiast and requires a firearm to protect himself, his patients and his family.

On February 18, 2023, there was an unfounded police report (Eric Spronz Aff. ¶¶ 4-8) submitted concerning the Plaintiff. No arrest was made. No crime was charged. Plaintiff did not do anything wrong or illegal. Plaintiff sent a statement, see Exhibit 4, to the Defendant Suffolk County Pistol Bureau and received a phone call on February 27, 2023 from Defendant Wustenoff that Plaintiff's firearms license was suspended. At the risk of arrest, Plaintiff was told he had "30 minutes to go and surrender your guns or I will send an officer to come and get them" Spronz Aff. ¶¶ 6-8.

Plaintiff was told he should "get some to watch him or [the Defendants] can send a car to your house to collect the guns" *Id.* Defendant Wustenhof also told Plaintiff that he "should think about having [an employee] as the office manager, [this one employee] and everyone in that house drug had arrests" and the Defendant also claimed he was "knowing that there was a potential for domestic violence [which] makes [Defendant Wustenhof] wonder about your moral character and you have a gun around your 7 year old" Spronz Aff. ¶¶ 6-10.

Plaintiff complied with Defendant Wustenhof's command and threat, arriving at the Defendant Suffolk County Police Department, 6th Precinct in Selden. Plaintiff complied fully although there were treacherous weather conditions, all of Plaintiff's handguns were cleared and verified by a Suffolk County Police Department desk officer.

3

Defendants claimed that Plaintiff was carrying a firearm out of class without citation to a law, policy, rule, guideline or any legal guidance that would substantiate this articulated basis for immediately removing Plaintiff's firearms and suspending Plaintiff's license. See Exhibits 6 and 7. Plaintiff contested the allegations and provided sworn statements from eyewitnesses Dan Walker and Marie Allgiere. See *Id.*. Plaintiff's statement along with other witnesses were sent to the Suffolk County Defendants, certified, on March 6, 2023. After several failed attempts to speak to Defendants or have the firearms and firearms license returned to him, Plaintiff sent an electronic mailing and follow up with a series of phone calls. After it was confirmed that Defendants, individually and collectively, received the sworn statements submitted by Plaintiff, it became clear that Defendants had no intention of complying with the constitutional mandates afforded by the Second Amendment or issuing a due process hearing.

On March 8, 2023, Defendant Wustenhof called Plaintiff and, in a very hostile and aggressive, told Plaintiff to never contact his chain of command again. On March 16, 2023, Plaintiff called Defendant Wostenhoff to request an update. There was no response. Plaintiff sent another electronic mailing to Defendant Wostenhoff on March 28, 2023 asking for a status update.

In response, Defendant Komarosky responded and told Plaintiff he was "suspended" for six (6) months and Plaintiff will get it back if he stops "harassing" Defendant Suffolk County Police Officers. To date, no written policy justifying Defendants actions towards Plaintiff has been produced albeit that it was requested.

4

Plaintiff submits that Defendants maintain an unconstitutional policy regarding the seizure of firearms and firearm license suspension contrary to the Second Amendment to the United States Constitution. This Suffolk County wide policy served to injure Plaintiff insofar as Plaintiff is being denied both the return of his firearms and his ability to legally carry a firearm.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the United States Supreme Court held that the Second Amendment right to keep and bear arms is a right held by private American citizens, including in one's home. In dicta, however, the *Heller* Court noted that its opinion "should not be taken" to cast doubt on laws "forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id*. at 626. The Supreme Court reiterated that view two years later in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as ... laws forbidding the carrying of firearms in sensitive places such as schools and government buildings"; also holding that the scope of the private right to bear arms for self-defense applies to States and cities). In *Caetano v. Massachusetts*, 577 U.S. 411, 416 (2016), the Court reaffirmed its holding in *Heller,* and clarified that the Second Amendment extends "to all instruments thatconstitute bearable arms, even those that were not in existence at the time of the founding ..." and that the Second Amendment right "is fully applicable to the States." *Id.*

On June 23, 2022, the Supreme Court of the United States held that N.Y. Penal Law § 400.00(2)(f), which conditioned the issuance in New York State of an unrestricted license to carry a handgun in public on the existence of "proper cause," violated the Second and Fourteenth Amendments by impermissibly granting a licensing official the discretion to deny a license to a law-abiding, responsible citizens absent a showing of a special, heightened, need for self-

5

protection distinguishable from that of the general community. *New York State Rifle & Pistol Association Inc. v. Bruen*, 142 S.Ct. 2111 (2022).

Plaintiff Eric Spronz brings this action under the U.S. Constitution, the New York State Constitution, and 42 U.S.C. § 1983 to address Defendants' unconstitutional policy that, upon information and belief, may be informed by other unconstitutional practices of the state. See, e.g., *GW v. CN*, 2022 N.Y. Slip Op 22392 (Monroe Sup. Ct. 2022). It is a policy decision made by Defendants, Suffolk County Law Enforcement, that is unique that injures Plaintiff in his inability to retrieve his property, firearms, and to legally carry a firearm which is necessary to his given trade for which he is a licensed professional, vetted by the United States Government.

We are not passive actors in this democratic "experiment," *Abrams v. United States*, 250 U.S. 616, 630-631, 40 S. Ct. 17, 63 L. Ed. 1173 (1919) (J. Holmes, dissenting), and we recognize that "eternal vigilance is the price of liberty," *Irby Construction Company v. United States*, 290 F.2d 824 (Ct. Cl. 1961), Plaintiff is forced to seek this relief that should issue in the absence of some credible explanation why Plaintiff should be subjected to an unconstitutional policy and be deprived of both his property and his New York State and United States Constitutional rights.

### THE STANDARD OF REVIEW
#### EQUITABLE RELIEF

The standard in the Second Circuit for injunctive relief, to, *inter alia,* obtain Plaintiff's return of firearms and firearm's license, calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *See Caulfield* v. *Board of Education,* 583 F.2d 605, 610 (2d Cir. 1978); see also *New York* v. *Nuclear Regulatory Commission,* 550 F.2d 745, 750, 755

6

(2d Cir. 1977); *Triebwasser& Katz* v.*Am. Telephone & Telegraph Co.,* 535 F.2d 1356, 1358–59 (2d Cir. 1976).

*New York* v. *Nuclear Regulatory Commission,* 550 F.2d 745, 750, 755 (2d Cir. 1977) merely required the probability of imminent harm and irreparable injury means injury for which a monetary award cannot be adequate compensation. *Studebaker Corp.* v. *Gittlin,* 360 F.2d 692, 698 (2d Cir. 1966); *Foundry Services, Inc.* v. *Beneflux Corp.,* 206 F.2d 214, 216 (2d Cir. 1948).

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a `person' acting `under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 122 (2d Cir. 2004). In this regard, Plaintiff does not seek monetary relief against Defendants for this motion, see, e.g., *Lewis v. Cuomo*, No. 20-CV-6316 CJS (W.D.N.Y. Dec. 16, 2021)but rather seeks to enjoin enforcement of this unconstitutional policy depriving Plaintiff of property, firearms, and a license to carry a firearm that is likely to cause imminent harm in the foreseeable should such relief not issue. Cf. *Nat'l Rifle Ass'n of Am. v. Hochul,* No. 20-3187-CV, 2021 WL 5313713, at *1 (2d Cir. Nov. 16, 2021).

Various Courts throughout the United States have recognized that "[i]n *New York State Rifle & Pistol Association v. Bruen*, the Supreme Court concludes that the 'Second and Fourteenth Amendments protect an individuals' right to carry a handgun for self-defense outside the home.'" *United States v. Hampton*, No. CR 21-0306 JB (D.N.M. Sept. 2, 2022) (citing *Bruen*, 142 S. Ct. at 2111). Successive challenges are being lodged against the latest set of New York laws restricting New Yorker's Second Amendment rights while this matter is unique insofar as Plaintiff had a legal right to carry a firearm, a legal right to possess firearms and engage in self-

7

defense if necessary but that Defendants, individually and collectively, maintain and enforce a policy of disarming lawful citizens and refusing to return firearms without due process of law.

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. See *Munaf* v. *Geren*, 553 U.S. 674, 689–690, 128 S.Ct. 2207, 2218–2219, 171 L.Ed.2d 1 (2008); *Winter* v. *Natural Res. Def. Council, Inc.*, 555 U.S. 7, 77 USLW 4001 (2008). Plaintiff demonstrates not only a probability of success but the type of irreparable injury that enjoins the constitutional use of a weapon, weapon licensed or creates a felon out of a law abiding citizen.

Plaintiff sets forth all factual circumstances in detailed affidavit and submits to this Honorable Court that the basis of suit must be determined, giving the Defendants an opportunity to be heard, on an expedited basis lest this Plaintiff be unable to safely carry on his vocation or, worse, he suffer irreparable injury in the wake of exponential increases in violence, drug-related criminal activity, physical attacks inclusive of robbery and theft related crimes. *Amoco Production Co.* v. *Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). *Weinberger* v. *Romero–Barcelo*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

## I.   DEFENDANTS, INDIVIDUALLY AND COLLECTIVELY, VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS EVIDENCED BY A POLICY

Plaintiff has the legal right to bear arms. U.S. Const. amend II. No circumstance or finding has been made against Plaintiff, that would justify to disarm Plaintiff or continue to disarm Plaintiff consistent with the United States Constitution and his ability to engage in self-defense. See *United States v. Hampton*, No. CR 21-0306 JB (D.N.M. Sept. 2, 2022).

8

Plaintiff was disarmed by Defendants, is injured by his inability to carry a firearm and submits that imminent harm may befall him, his family and others should he continue to suffer these constitutional violations and be prevented from defending himself or others. Plaintiff submits that COUNTY OF SUFFOLK maintains an unconstitutional policy enforced by SUFFOLK COUNTY EXECUTIVESTEVEN BELLONE and SUFFOLK COUNTY POLICE COMMISSIONER RODNEY K.HARRISON for which SUFFOLK COUNTY COMMANDING OFFICER OF THE PISTOL LICENSING BUREAU LIEUTENANT MICHAEL KOMOROWSKI, SUFFOLK COUNTY POLICE OFFICER KEVIN WUSTENHOF, SUFFOLK COUNTY POLICE OFFICER/PISTOL LICENSING BUREAU POLICE OFFICER DANIEL JUGAN and JOHN AND JANE DOE NO. 1-10 enforce such unconstitutional policy that continue to deprive Plaintiff of firearms in violation of his constitutional rights.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  The Second and Fourteenth Amendments create a right that "is exercised individually and belongs to all Americans." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). Law enforcement agents cannot be subject to the whim and caprice of an officer who decides to summarily conclude that someone is not in the "right class" or hiring the right persons, or, as stated herein, that Plaintiff has a young child in the house.  x`

This Second Amendment standard accords with how we protect other constitutional rights, like the freedom of speech in the First Amendment, to which *Heller* repeatedly compared the right to keep and bear arms.*New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S.Ct. 2111 (2022)(citing *Heller,* 554 U. S., at 582, 595, 606, 618, 634-635).

9

Plaintiff is a licensed professional engaged in a heavily regulated industry. He engaged in a thorough review by both the State and Federal government in his given vocation.

Plaintiff, and other citizens, are allowed to keep firearms, property, for which Plaintiff cannot be summarily deprived of without due process of law. Together with this property right, this "natural right of resistance and self preservation," 1 Sir William Blackstone, Commentaries on The Laws Of England 144 (1753), has been described as the "first law of nature" and "the true palladium of liberty." St. George Tucker, *View of The Constitution of The United States with Selected Writings* 238 (Clyde N. Wilson ed. 1999). Defendants cannot justify a policy of collective punishment or an unconstitutional carry-class system, nevertheless the taking of firearms in light of previous and recent United States Supreme Court legal precedent.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Court held that the Second Amendment right to keep and bear arms is a right held by private American citizens. *Id*. at 595. In *McDonald v. City of Chicago*, 561 U.S. 742 (2010) ("*McDonald*"), the Court held that the scope of that right applies to States and their political subdivisions, *id.* at 750, and that the contours of the right against the States are coextensive and coterminous with the contours a citizen can assert against the federal government, *id.* at 778–80. While limitations and reasonable restrictions are recognized, see, e.g., *New York State Rifle & Pistol Association, Inc. v. City of New York*, No. 18-280 (U.S. Apr. 27, 2020), the right is recognized, protected and is violated when someone merely is associated to someone who may be unqualified or disqualified to possess a firearm.

Even prior to the Supreme Court precedent in *Bruen,* the Supreme Court of the United States in *McDonald* described the Second Amendment as a "'pre-existing right.'" *Id.* at 915. *Heller* too rejected the idea that the right "'is ... in any manner dependent on [the Bill of Rights]

10

for its existence.'" *Heller* at 592.  In *McDonald v. City of Chicago*, four justices adopted the textual view that the Second Amendment applied to the states on the theory that it was incorporated into the Due Process Clause of the Fourteenth Amendment. However, Justice Thomas' concurrence presented a textualist position — that the Second Amendment is among the Privileges or Immunities guaranteed to Citizens against deprivation by States in the Fourteenth Amendment. See *McDonald* at 806 (Thomas, J., concurring).

The Second Amendment is not "subject to an entirely different body of rules than the other Bill of Rights guarantees that we have held to be incorporated into the Due Process Clause" *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).Justice Thomas has observed that "[t]he right to keep and bear arms is apparently this Court's constitutional orphan. And the lower courts seem to have gotten the message." *Silvester v. Becerra*, 138 S. Ct. 945, 952 (2018) (Thomas, J., dissenting). Justice Thomas has charged that "the lower courts are resisting this Court's decisions in Heller and McDonald and are failing to protect the Second Amendment...." *Id*. at 950.

Even before *Bruen,* the evisceration of the right to carry by the association to someone who may be unqualified to carry a firearm would be a Second Amendment violation. The Supreme Court has stated, "We have required proof by clear and convincing evidence where particularly important individual interests or rights are at stake," *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983) and while "ensuring public safety and order" meets the intermediate-scrutiny standard, *Schenk v. ProChoice Network of W. N.Y.*, 519 U.S. 357, 372 (1997), one cannot help but see the obvious problem when the ability to carry a weapon is removed from, for example, Plaintiff Spronz, in carrying a firearm as contemplated by federal law (see Eric Spronz Aff. ¶¶ 3-4, 7-11) to defend himself or others would thus subject him to arrest, booking, detainment, search, seizure, ridicule, harm and prosecution.

11

Defendants' policy, whether it be one of collective punishment or that of designating a carry-license class, is inherently unconstitutional and deprives persons of property, government-issued license, and the exercise of a constitutional right without due process.

These Defendants cannot deprive Plaintiff of his rights, his firearm license, without due process, even if temporary. *Hague v. Sedita*, 56 Misc.2d 203, 288 N.Y.S.2d 212 (citing *Matter of Gulotta v. Kelly*, 8 Misc.2d 721, 168 N.Y.S.2d 60 (1957)). Plaintiff Spronz, for example, should not lose his license because he lives with someone who may be disqualified from carrying a firearm. See *Goldstein v. Suffolk County et al.*, 23-cv-00051 (JMA)(LGD); *Bell v Burson*, 402 U.S. 535, 539 (1971); see also *Evans v. City of New York*, 308 F. Supp. 2d 316, 323 (S.D.N.Y. 2004) (once granted, a license is a protected property interest, and the Due Process Clause thus applies to the deprivation of a driver's license by the State.") (citing *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("Suspension of issued licenses ... involves state action that adjudicates important interests of the licensees…the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.").

Plaintiff must be afforded some modicum of due process prior to the removal of the protection(s) afforded by his license lest he be subject to a felony arrest. *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); *Perry v. Sindermann*, 408 U. S. 593, 601 (1972); see *Board of Regents v. Roth*, 408 U. S. 564 (1972); *Bell v. Burson*, 402 U. S. at 539; *Goldberg v. Kelly*, 397 U. S. 254 (1970). Irrespective of the protections afforded by the Second Amendment to the United States, Plaintiff still had property rights that are blatantly infringed by Defendants' refusal to turn over the firearms to Plaintiff or a licensed dealer for sale.

In *New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S.Ct. 2111 (2022) the U.S. Supreme held that the "proper cause" standard "prevents law-abiding citizens with ordinary

12

self-defense needs from exercising their right to keep and bear arms." *Id. at.* 2156; *see also id.* at

2162 (Kavanaugh, J., concurring) ("As the Court explains, New York's outlier may-issue regime

is constitutionally problematic because it grants open-ended discretion to licensing officials and

authorizes licenses only for those applicants who can show some special need apart from self-

defense"). New York Courts recognized that the former "New York statute impermissibly

infringed upon that constitutional guarantee because, unlike 43 other states, it required a showing

of particularized need in order to obtain such a license, rendering the exercise of the right by

ordinary citizens a near-impossibility." *People v. Rodriguez*, 2022 N.Y. Slip Op 22217 (NYC

Sup. Ct. 2022).There is no guilt by association. There is no class of carry license. Plaintiff has

not done anything to justify the continued seizure of his weapons nevertheless the punishment

placed upon him for an unfounded complaint. See Exhibits 3, 6-9.

Plaintiff is being irreparably harmed by Defendants' denial of his rights and Plaintiff will

continue to be irreparably harmed unless and until Defendants are enjoined from enforcing this

unconstitutional policy that serves to disarm citizens without due process of law, that takes their

property without compensation and that eviscerates the ability to engage in self-defense.

Plaintiff, uniquely, is now forced to contemplate whether he can engage in his given trade and

profession given the inability to effectively safeguard (legally possessed) controlled substances.

## II.   PLAINTIFF IS ENTITLED TO IMMEDIATE EQUITABLE RELIEF IN THE RETURN OF HIS PROPERTY, FIREARMS, AND ABILITY TO CARRY A FIREARM CONSISTENT WITH THE UNITED STATES CONSTITUTION

Plaintiffs show a likelihood of success on the merits and articulates known harms, recognized

in the issuance of a federal firearm carry license, that is likely to occur in the absence of

preliminary relief - the balance of equities tips in Plaintiff's favor and this injunction is in the

public interest as demonstrated by Defendants' stated purpose for these laws: Safety. See *Munaf*

13

v. *Geren*, 553 U.S. 674, 689–690, 128 S.Ct. 2207, 2218–2219, 171 L.Ed.2d 1 (2008); *Winter* v.

*Natural Res. Def. Council, Inc.*, 555 U.S. 7, 77 USLW 4001 (2008).

Plaintiff articulates that he both had a license, lawfully carried a firearm and compliance with

Defendants' unconstitutional policy that served to take his property, his firearms, without due

process of law and refused him the ability to defend himself against likely perpetrators that

follow those in high-risk industries, here the possession of (legally held) controlled substances as

part of his professional duties to visit and prescribed such controlled substances. *Amoco*

*Production Co.* v. *Gambell*, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). Further,

this Honorable Court can take judicial notice of the increase of violence, including "gun"

violence, across New York State that makes it all the more important, not just for the Plaintiff

but for the public, that trained persons be able to carry firearms lest irreparable injury occur

because Defendants' disarmed Plaintiff. See *Weinberger* v. *Romero–Barcelo*, 456 U.S. 305, 102

S.Ct. 1798, 72 L.Ed.2d 91 (1982).

This Honorable Court should Order the immediate return of Plaintiff's weapons and his

firearm license for his safety and the safety of those around him. This Honorable Court should

take notice that Plaintiff is unable to effectively safeguard controlled substances he carries as part

of his profession, vocation and by license due to Defendants' unconstitutional policy.

Plaintiff further seeks to enjoin the unconstitutional policy of Defendants. "In exercising their

sound discretion, courts of equity should pay particular regard for the public consequences in

employing the extraordinary remedy of injunction." *Romero-Barcelo*, 456 U.S., at 312, 102 S.Ct.

1798; see also *Railroad Comm'n of Tex.* v. *Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 85

L.Ed. 971 (1941). Defendants are tasked with enforcement of the law, the United States

Constitution, and a federal monitor is appropriate under such circumstances should Defendants,

individually and collectively, work to disarm law abiding citizens, nevertheless former law enforcement (see, e.g., *Goldstein v. Suffolk County et al.*, 23-cv-00051 (JMA)(LGD)), take their firearms without compensation or due process and refuse firearm licenses based upon associational punishment.

Plaintiff establishes that irreparable injury is *likely* in the absence of an injunction. *Los Angeles* v. *Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Granny Goose Foods, Inc.* v. *Teamsters,* 415 U.S. 423, 441, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *O'Shea* v. *Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

In general, where a complaint alleges the denial of a constitutional right, irreparable harm will be presumed. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"). That is certainly the case here, where the challenged policy is deprives Plaintiff and others so unfortunate to be similarly situated of their rights under the Second, Fifth and Fourteenth Amendments of the U.S. Constitution. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the deprivation of constitutional rights "for even minimal periods of time, unquestionably constitutes irreparable harm"); *Connecticut Dept. of Environmental Protection v. O.S.H.A.*, 356 F.3d 226, 231 (2d Cir. 2004) ("[W]e have held that the alleged violation of a constitutional right triggers a finding of irreparable injury."); *Statharos v. New York City Taxi & Limousine Comm'n*, 198 F.3d 317, 322 (2d Cir. 1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary"); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (clarifying that "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm" and a substantial likelihood of success on the merits of a constitutional violation is not necessary). Further, the stigma, loss of employment

15

opportunity and collateral consequences from the disarming of Plaintiff are injuries that cannot adequately be recompensed with monetary damages after the fact. *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 73 (2d Cir 1979) (an irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate).

Defendants cannot articulate a basis to continue to enjoin constitutional protections from its citizens, nevertheless former law enforcement (see, e.g., *Goldstein v. Suffolk County et al.*, 23-cv-00051 (JMA)(LGD)), in simply defending themselves and their families as noted by *New York State Rifle & Pistol Association Inc. v. Bruen,* 142 S.Ct. 2111 (2022) "consistent with the approach used in *District of Columbia v. Heller,* 554 U.S. 570, 635 (2008) *:* (i) "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; and (ii) "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen,* 142 S. Ct. at 2129-30. Defendants cannot justify a policy of disarming Plaintiff and other similarly situated citizens based on association or an arbitrary class system neither articulated or demonstrated by the Defendants. See Spronz Aff. ¶¶ 7-11.

Where, as here, the government is the opposing party, the final two factors in the temporary restraining order analysis – the balance of the harms and the public interest – merge. *Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018). As to the balance of harms, the likelihood of real and immediate irreparable harm to plaintiffs from the failure to grant them interim relief clearly outweighs the likelihood of any harm to defendants from granting such relief. After all, "securing [Constitutional] rights is in the public interest." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013); *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020)

16

("[T]he public interest is best served by ensuring the constitutional rights of persons within the United States are upheld") (citation omitted). And, the risk to Plaintiff and others' physical safety and welfare posed by disarming them arbitrarily and at the caprice of an individual policy maker's feeling (see Sponz Aff. ¶¶ 10-14), thus creating an issue whether Plaintiff can safeguard (legally possessed) controlled substances is a substantial harm against which defendants have no countervailing interest. *See, e.g., Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 43-44 (2d Cir. 1997) (finding irreparable harm where the government action would pose serious risk of harm to plaintiffs, including "death, illness or disability"); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332-33 (2d Cir. 1995) (upholding District Court's irreparable harm finding based on the "risk of injury, infection, and humiliation").

Defendants cannot show that enjoining this policy will adversely impact them at all and serves the stated basis for its decisions: Safety. First, "the Government does not have an interest in the enforcement of an unconstitutional law." *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003). In the real world, policies such as the one at issue merely disarm law abiding citizens, while doing nothing to disarm those who have no regard for the law in the first place.

This Honorable Court can take notice of *Goldstein v. Suffolk County et al.*, 23-cv-00051 (JMA)(LGD) and that the Defendants, individually and collectively, were placed on notice that this policy was unconstitutional and that litigation would issue in the absence of due process, both procedural and substantive, occasioned by the seizure of property nevertheless the refusal to return property after the purported basis for seizure evaporates. That the Defendants policy and practice, evidenced by *Goldstein v. Suffolk County et al.*, 23-cv-00051 (JMA)(LGD), continues allows this Honorable Court to summarily grant not only the relief as provided in *Goldstein v.*

17

*Suffolk County et al.*, 23-cv-00051 (JMA)(LGD), the return of the firearms and license, but the equitable relief of a federal monitor to ensure compliance with the United States Constitution.

Accordingly, the balance of harms and the public interest weigh in favor of granting Plaintiff's motion for a temporary restraining order, provisional appointment of a federal monitor/receiver and preliminary injunction.

## CONCLUSION

Plaintiff respectfully prays that This Honorable Court issue an Order Mandating that the Suffolk County Police Department reinstating the pistol license of the plaintiff; Mandating that the Suffolk County Police Department Pistol License Section be ordered to return to the plaintiff all his firearms seized by the Suffolk County Police Department; and further instruct Defendants turn over allwritten policies regarding suspension of pistollicenses, all documents related to this case includingnotes, memoranda, text messages, e-mails, interofficeinstant messages, letters, investigative notes in"native format" as relevant to Defendants' unconstitutional pattern and practice of violating the constitutional rights of Plaintiff and others similarly situated; preliminarily Appoint a Federal Monitor, issue further relief as to this courtmay seem just and proper, together with all other relief that this Honorable Court deems just and appropriate given the above circumstances inclusive of reasonable attorney's fees.

Plaintiff exhausted all available remedies for which he had to hire and undertake legal costs of filing this suit. Reasonable attorney's fees should issue immediately as, in the context of, Second Amendment Rights, three dissenting Supreme Court Justices, dissenting prior to its latest decision where the same State Defendants made another set of unconstitutional gun laws, opined that:

> If a § 1983 plaintiff achieves *any success on the merits,* even an
> award of nominal damages, the plaintiff is a prevailing party and is

18

eligible for attorney's fees under 42 U. S. C. §1988.
See *Buckhannon Board & Care Home, Inc.* v. *West Virginia Dept.
of Health and Human Resources,* 532 U. S. 598, 603 (2001). For
this reason, were the Court to exercise jurisdiction in this case and
rule for petitioners, they would be eligible for attorney's fees.
See *Farrar* v. *Hobby,* 506 U. S. 103, 109 (1992).

*New York State Rifle & Pistol Association, Inc. v. City of New York*, No. 18-280 (U.S. Apr. 27,

2020) (J. Alito dissenting).

Should Defendants decide to immediately return the firearms to Plaintiff and reinstate his

firearms license, not only does such a claim survive but "[t]he burden of justification is

demanding and it rests entirely on the State," *United States v. Virginia,* 518 U.S. 515, 533, 116

S.Ct. 2264, 135 L.Ed.2d 735 (1996), for which a provisional federal monitor or receiver is still

sought, as it was in *Goldstein v. Suffolk County et al.*, 23-cv-00051 (JMA)(LGD), to enjoin

further violations of the New York State and United States Constitutions.

DATEDAT     Central Islip , New York
           April 17, 2023

/S/

**CORY H. MORRIS**(CM5225)
THE LAW OFFICES OF CORY H. MORRIS
*Attorney for Eric Spronz*
863 Islip Avenue
Central Islip New York 11722
Phone:   (631)450–2515
FAX:   (631)223–7377
Email:   Cory.H.Morris@protonmail.com

**RICHARD YOUNG, ESQ.**
*COCOUNSEL TO ERIC SPRONZ*
