1

2      UNITED STATES DISTRICT COURT
       EASTERN DISTRICT OF NEW YORK
3      ----------------------------------------X
       ERIC SPRONZ,
4
                           Plaintiff,
5                  -against-
             DOCKET NO.: 2:23-CV-03689 (JMA)(SIL)
6
       COUNTY OF SUFFOLK, SUFFOLK COUNTY EXECUTIVE
7      STEVEN BELLONE, IN HIS OFFICIAL CAPACITY
       ONLY, SUFFOLK COUNTY POLICE COMMISSIONER
8      RODNEY K. HARRISON, IN HIS OFFICIAL
       CAPACITY ONLY, SUFFOLK COUNTY COMMANDING
9      OFFICER OF THE PISTOL LICENSING BUREAU
       LIEUTENANT MICHAEL KOMOROWSKI, IN HIS
10     OFFICIAL CAPACITY ONLY, SUFFOLK COUNTY
       POLICE OFFICER KEVIN WUSTENHOFF, IN HIS
11     INDIVIDUAL AND OFFICIAL CAPACITY, SUFFOLK
       COUNTY POLICE OFFICER/PISTOL LICENSING
12     BUREAU POLICE OFFICER DANIEL JUGAN, IN HIS
       INDIVIDUAL AND OFFICIAL CAPACITY, JANE AND
13     JOHN DOE NO. 1-10, IN THEIR OFFICIAL AND
       INDIVIDUAL CAPACITY
14
                           Defendants.
15     ----------------------------------------X
                   Zoom Videoconference
16                 New York, New York

17                 DATE: September 26, 2024
                   TIME: 11:46 a.m.
18
       DEPOSITION of MICHAEL KOMOROWSKI, a
19     Defendant herein, taken by the Plaintiff,
       a Defendant herein, taken by the Plaintiff,
20     pursuant to Article 31 of the Civil
       Practice Law & Rules of Testimony, and held
21     remotely, before GABRIELLA TUTINO, a
       Stenographic Reporter and Notary Public of
22     the State of New York.

23

24

25

1

2    A P P E A R A N C E S

3    LAW OFFICE OF RICHARD W. YOUNG, SR. ESQ
     Attorney for Plaintiffs
4    863 Islip Avenue
     Central Islip, NY 11722
5    631.224.7500
     BY: CORY MORRIS, ESQ.
6    BY: RICHARD YOUNG, ESQ.
     E-MAIL: Info@CoryHMorris.com

7

8    SUFFOLK COUNTY ATTORNEY'S OFFICE
     ASSISTANT COUNTY ATTORNEY
9    Attorney for Defendants
     H. Lee Dennison Building
10   100 Veterans Memorial Highway
     P.O. Box 6100
11   Hauppauge, NY 11788
     631-853-4055
12   BY: ARLENE S. ZWILLING, ESQ.
     E-MAIL: ARLENE.ZWILLING@SUFFOLKCOUNTYNY.GOV

13

14   ALSO PRESENT:

15   Eric Spronz, plaintiff

16   Kevin Wustenhoff, defendant

17

18

19

20

21

22

23

24

25

1

2                    S T I P U L A T I O N S

3

4          IT IS HEREBY STIPULATED AND AGREED

5    by and between the attorneys for the

6    respective parties herein, that filing,

7    sealing and certification be and the same

8    are hereby waived.

9          IT IS FURTHER STIPULATED AND AGREED

10   that all objections, except as to the form

11   of the question shall be reserved to the

12   time of the trial.

13         IT IS FURTHER STIPULATED AND AGREED

14   that the within deposition may be signed

15   and sworn to before any officer authorized

16   to administer an oath, with the same force

17   and effect as if signed and sworn to before

18   The Court.

19

20   IT IS FURTHER STIPULATED AND AGREED that

21   subject to any rulings on any express or

22   reserved objections to particular

23   questions, the transcript of this remote

24   deposition will be deemed admissible for

25   purposes of any dispositive motions, and

1

2    will be deemed admissible by the

3    party-opponent at trial.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    M. KOMOROWSKI
 2              THE REPORTER:  I'm going to ask
 3         Counsel to stipulate it's okay to
 4         swear in the witness remotely for
 5         today's deposition and that there's
 6         no objection at this time nor will
 7         there be one at a future date.
 8              MR. MORRIS: No objection.
 9              MS. ZWILLING: So agreed.
10
11    M I C H A E L  K O M O R O W S K I, after
12    having first been duly sworn by a Notary
13    Public of the State of New York, was
14    examined and testified as follows:
15
16    EXAMINATION BY MR. MORRIS:
17         Q.    State and spell your name for
18    the record, please.
19         A.    Michael Komorowski.
20         Q.    State and spell your address
21    for the record, please.
22         A.    30 Yaphank Avenue, Yaphank, New
23    York.
24         Q.    Good morning, Mr. Komorowski?
25         A.    Good morning.
```

                    M. KOMOROWSKI

    1

    2      Q.    Mr. Komorowski, what is your

    3   title?

    4      A.    Lieutenant.

    5      Q.    Lieutenant Komorowski, is there

    6   any reason that you can't tell the truth

    7   here today?

    8      A.    No.

    9      Q.    Where are you currently?

   10      A.    Where am I currently, at 30

   11   Yaphank Avenue.

   12      Q.    Who, if anyone, is in the room

   13   with you?

   14      A.    Officer Wustenhoff.

   15      Q.    Do you have any notes,

   16   documents, anything relating to the case in

   17   front of you?

   18      A.    No.

   19      Q.    You were present the entire

   20   time for Mr. Wustenhoff's testimony;

   21   correct?

   22      A.    Yes.

   23      Q.    Lieutenant Komorowski, to whom

   24   do you report as an officer with the

   25   Suffolk County Police Department?

                    M. KOMOROWSKI

1

2        A.    Who do I report to, would be

3    right now Inspector Webber.

4        Q.    To whom, if anyone, does

5    Inspector Webber report to as inspector of

6    the Suffolk County Police Department?

7        A.    Chief Romano.

8        Q.    The chief, the chief you

9    mentioned earlier, the chief of the Suffolk

10   County Police Department, to whom, if

11   anyone, does that chief report to?

12       A.    I would think the chief of the

13   department and also the police

14   commissioner.

15       Q.    Who, if anyone, does the police

16   commissioner of the Suffolk County Police

17   Department report to?

18       A.    I have no idea.

19       Q.    Are you responsible for

20   enforcing the policies of the Suffolk

21   County Police Department?

22       A.    Yes.

23       Q.    Did you suspend Eric Spronz's

24   pistol license?

25       A.    Yes.

1                    M. KOMOROWSKI

2         Q.    Is it the policy of the Suffolk

3    County Police Department to suspend pistol

4    licenses like Eric Spronz?

5              MS. ZWILLING: Objection, you

6         may answer.

7         A.    I don't know what you're trying

8    to say.

9         Q.    Did you suspend Eric Spronz's

10   pistol license pursuant to a Suffolk County

11   Police Department policy?

12        A.    I suspended it due to our

13   policy and also our common practice and

14   also the New York State penal law.

15        Q.    You said policy, practice, and

16   the New York State penal law; correct?

17        A.    Yes.

18        Q.    What New York State penal law

19   section did you suspend Eric Spronz as the

20   license pursuant?

21        A.    Under 400.

22        Q.    Specifically what section?

23              MS. ZWILLING: He just told

24        you.

25        A.    Under 400 of the penal law.

1                    M. KOMOROWSKI

2          Q.    Is there any specific

3    subdivision of 400 of the penal law?

4          A.    I would have to look it up.

5          Q.    As you sit here today, you

6    don't now what section of the New York

7    State penal law you suspended Eric Spronz's

8    pistol license; is that right?

9          A.    No.

10         Q.    Policy. What is the Suffolk

11   County Police Department policy pursuant to

12   which you suspended Eric Spronz's pistol

13   license?

14              MS. ZWILLING: Objection, you

15         may answer if you know the answer.

16         A.    If he does violate a section of

17   the penal law we do suspend.  That is

18   common practice.

19         Q.    What section of the penal law

20   was violated?

21         A.    400.

22         Q.    Any specific provision of 400?

23         A.    I already told you I have to

24   look that up.

25         Q.    As you sit here you don't know?

1                    M. KOMOROWSKI

2          A.    No.

3          Q.    Can you describe the conduct

4     for which a penal law provision was

5     violated by Eric Spronz?

6          A.    Eric Spronz did have a

7     concealed carry license at the time, which

8     he would know because he went to the

9     training and we did advise him when he got

10    his concealed carry. And he is not allowed

11    to go to a restricted location with his gun

12    showing.

13         Q.    What restricted location did he

14    go?

15         A.    The property of the another

16    person.

17         Q.    To be clear, Eric Spronz

18    visiting the property of another person was

19    a violation of the penal law since he

20    carried a firearm?

21         A.    That's not what I said.

22         Q.    Please, in your own words how

23    did Eric Spronz violate the penal law?

24         A.    He went to a location showing

25    his handgun and was advised to remove

```
 1                    M. KOMOROWSKI
 2   himself from that location.
 3        Q.    Anything else?
 4        A.    Anything else, at that point we
 5   suspended his license for further
 6   investigation by Officer Wustenhoff.
 7        Q.    Who suspended that license?
 8        A.    I suspended.
 9        Q.    Did anyone act with you or did
10   you confer with anyone in suspending the
11   license of Eric Spronz?
12        A.    No.
13        Q.    Did you confer with any
14   supervisors in the suspension of the
15   license of Eric Spronz?
16        A.    No.
17        Q.    Did you have authority to
18   suspend the pistol license of Eric Spronz?
19        A.    Yes.
20        Q.    By what authority did you
21   suspend the pistol license of Eric Spronz
22   as lieutenant of the Suffolk County Police
23   Department?
24        A.    As a lieutenant of the pistol
25   license bureau.
```

1                    M. KOMOROWSKI

2        Q.    Did you seek -- withdrawn.

3              By what authority -- withdrawn.

4              Was any other penal law

5    provision -- withdrawn.

6              Was any other New York State

7    penal law provision violated by Eric Spronz

8    aside from penal law 400; to your

9    knowledge?

10        A.    It would be 265, violation of

11   the restricted locations.

12        Q.    What provision of penal law 265

13   was violated?

14        A.    Section 265, I'd have to look

15   up the subsection.

16        Q.    What conduct of Eric Spronz

17   violated penal law 265?

18        A.    Under the concealed carry law,

19   when he goes somewhere, the gun has to be

20   concealed at all times.

21        Q.    Anything else?

22        A.    According to the report that we

23   received, the field report, the gun was

24   showing and he did walk onto the private

25   property with the handgun.

```
 1                    M. KOMOROWSKI
 2         Q.     What, if anything, did you
 3    evaluate to make that determination?
 4         A.     The field report.
 5         Q.     Anything else?
 6         A.     At that time, no.
 7         Q.     As you sit here today, is there
 8    anything else you evaluated in making the
 9    determination to suspend the pistol license
10    of Eric Spronz?
11         A.     As I sit here today, no.
12         Q.     Aside from the field report, is
13    there any other documentation to which you
14    referred to in suspending the pistol
15    license of Eric Spronz?
16         A.     No.
17         Q.     As lieutenant of the Suffolk
18    County Police Department, who, if anyone,
19    are you required to consult with before
20    suspending the pistol license of a citizen
21    of Suffolk County?
22         A.     No one.
23         Q.     You have to seek any judicial
24    intervention to suspend the pistol license
25    from someone from Suffolk County?
```

1                    M. KOMOROWSKI

2         A.    No.

3         Q.    Are you given authority to do

4    so by your supervisors that you described

5    earlier?

6         A.    Yes.

7         Q.    Any other penal law provision

8    we did not discuss that Eric Spronz

9    allegedly violated by his conduct?

10        A.    I don't believe so.

11        Q.    Was Eric Spronz ever charged

12   with a crime?

13        A.    No.

14        Q.    Was he ever convicted of any

15   crime?

16        A.    I have no idea.

17        Q.    As you sit here today, you

18   don't know if Eric Spronz was convicted of

19   a crime before you suspended his pistol

20   license?

21        A.    No, I didn't run him prior to

22   suspending his license.  Could have been

23   convicted of a crime 20 years ago.

24        Q.    What, if any, other penal law

25   violation did Eric Spronz allegedly violate

```
 1                    M. KOMOROWSKI
 2    before the suspension of his pistol license
 3    permit?
 4         A.    None.
 5         Q.    As lieutenant of the Suffolk
 6    County Police Department, what, if any,
 7    Suffolk County Police Department policy is
 8    utilized to suspend the pistol licenses of
 9    persons within Suffolk County?
10         A.    Common practice of the police
11    licensing bureau.  If he violates, you're
12    talking about policy, right. Just common
13    practice.
14         Q.    Whose common practice?
15         A.    The police licensing bureau.
16         Q.    Has the common practice of the
17    Suffolk County police licensing bureau
18    changed within the past five years?
19              MS. ZWILLING: I think you mean
20         pistol licensing bureau.
21         A.    Yes.
22         Q.    How did it change?
23         A.    It changes, we have concealed
24    carry now.  So with the Bruen case it
25    changed to concealed carry.
```

```
 1              M. KOMOROWSKI

 2              MR. MORRIS: It's New York

 3         State Rifle and Pistol Association

 4         versus B-R-U-E-N 597 U.S. reporter

 5         142, Supreme Court reporter 2111, '22

 6         Supreme Court decision just for the

 7         record.

 8         Q.    Lieutenant Komorowski, you were

 9    saying earlier it changed with the past

10    five years that being the Suffolk County

11    Police Department pistol licensing bureau

12    policy.  How did it change?

13         A.    When the law changes, we

14    change.  We follow the law.

15         Q.    What was the law prior to

16    Bruen?

17              MS. ZWILLING: With respect to

18         what.

19         Q.    I'm sorry, what were you saying

20    Lieutenant?

21              MS. ZWILLING: No, I'm speaking

22         and it would be proper for you to

23         respond to me. Could you rephrase

24         your question.

25              MR. MORRIS: I'm sorry, I
```

```
 1                  M. KOMOROWSKI
 2          didn't even hear that there was an
 3          objection.
 4          Q.   Lieutenant Komorowski, you're
 5     familiar --
 6               MS. ZWILLING: Mr. Morris, you
 7          are ignoring my objection.  You do
 8          not have the freedom to do that.  I
 9          do not treat you in such a dismissive
10          manner.  Kindly stop smirking at me.
11          The reporter unfortunately cannot
12          pick up the facial expression you are
13          making.
14               MR. MORRIS: Please stop and
15          when you're done --
16               MS. ZWILLING: Do not interrupt
17          me.
18               MR. MORRIS: When you're done,
19          please let us know.
20               MS. ZWILLING: I can't speak
21          because you continuously interrupt
22          me.  I'm objecting to the question.
23          When I object, you do not have the
24          freedom to choose to ignore me and
25          badger my client.  You need to show
```

```
 1                    M. KOMOROWSKI
 2          me the same level of respect I have
 3          shown you throughout.  Now I am
 4          asking you to rephrase the question.
 5                    MR. MORRIS: Are you finished.
 6                    MS. ZWILLING: I haven't said
 7          anything in probably 45 seconds so
 8          obviously you are aware that I'm
 9          finished.
10                    MR. MORRIS: No, I'm not Ms.
11          Zwilling. In fact, you continue to
12          accuse me of random things. I'm
13          trying to speak, I didn't hear what
14          you said, I didn't hear the word
15          objection.  Your characterization is
16          not only misplaced, it's ridiculous.
17          So if you have an objection please
18          make it and I'll let you do so.
19          That's why I'm asking when you're
20          done please let me know because we're
21          on a computer.  I don't know when
22          you're finished.  So my asking you
23          when you're finished, that's not a
24          polite suggestion. It's a requirement
25          unless you're going to continue to
```

```
  1                M. KOMOROWSKI
  2        complain about me interrupting you.
  3        So if you're going to complain about
  4        me interrupting you, I'm going to ask
  5        you to please let me know when you're
  6        finished. You can't have it both
  7        ways, that's kind of insane right.
  8            MS. ZWILLING: Are you
  9        finished.
 10            MR. MORRIS: You would like the
 11        same courtesy that I'm asking you.
 12        Yes, I am finished but please, if
 13        you're going to object, object so I
 14        can move forward.  Can we agree on
 15        that.
 16            MS. ZWILLING: Mr. Morris if
 17        you continue to smirk at me.
 18            MR. MORRIS: I object, I'm not
 19        doing that.  You're ridiculous.
 20            MS. ZWILLING: If you continue
 21        to insult me for what is obviously
 22        poorly chosen tactical reasons, we
 23        will terminate this deposition.
 24        Because I have, we have encountered
 25        each other on numerous occasions
```

```
1                    M. KOMOROWSKI
2           throughout our careers, and
3           regrettably I am forced to say that
4           on not one single of those occasions
5           have you ever treated me in a
6           collegiate fashion, nor have you
7           treated the other women attorneys in
8           this office as your equals.  Please
9           proceed, otherwise we terminate the
10          deposition.
11               MR. MORRIS: Ms. Zwilling,
12          don't insult me.  The first time we
13          spoke I was in my 20s and you accused
14          me of arguing slavery in an all Black
15          law firm. So please, object and move
16          on.  If you can't do that, let's call
17          the court and we will figure it out.
18               MS. ZWILLING: That is
19          precisely what you did Mr. Morris.
20          Please proceed.
21          Q.    Lieutenant, good afternoon?
22          A.    Hello.
23          Q.    Lieutenant, we were talking
24     about the New York State Rifle and Pistol
25     Association versus Bruen case, a 2022
```

```
 1                M. KOMOROWSKI
 2    Supreme Court case.  Are you familiar with
 3    that case as the lieutenant of the Suffolk
 4    County Police Department pistol licensing
 5    bureau?
 6         A.    Yes, I am.
 7         Q.    What was the state of the law
 8    prior to the Bruen case?
 9              MS. ZWILLING: With respect to
10         what? We are going to be here for a
11         very, very long time if you expect
12         the witness to fully discuss every
13         change in the law arguably effected
14         by the Bruen case.  More over, there
15         are changes that probably have zero
16         relevance to this case.  I am asking
17         you to kindly limit your question to
18         any changes that may be relevant to
19         your client's claims.
20              MR. MORRIS: I'll take that to
21         an objection and try and limit the
22         question, okay. Is that fair?
23              MS. ZWILLING: Let's hear the
24         question.
25              MR. MORRIS: Okay.  I'm going
```

```
 1                     M. KOMOROWSKI
 2           to ask the same question but try and
 3           be more specific.
 4           Q.    Lieutenant Komorowski, as
 5      lieutenant of the Suffolk County Police
 6      Department pistol licensing bureau, did
 7      your job change at all when New York State
 8      Rifle and Association versus Bruen was
 9      issued?
10           A.    No.
11           Q.    What was your job as it relates
12      to the pistol licensing bureau and the
13      citizens of Suffolk County maintaining
14      pistol licenses within the county?
15           A.    What is my job. Approving,
16      disapproving licenses, overseeing the
17      bureau, any suspensions, revocations.
18           Q.    Who, if anything, is
19      responsible for the oversight of the bureau
20      aside from yourself?
21           A.    The chain of command which
22      would be the inspector, the chief, or the
23      police commissioner.
24           Q.    Is it your job in approving and
25      denying, suspending or revoking licenses
```

                    M. KOMOROWSKI

1    within the Suffolk County Police

2    Department, is that part of enforcing the

3    policy of Suffolk County Police Department?

4         A.    Is my job enforcing, yes.

5         Q.    You're the head of the Suffolk

6    County pistol licensing bureau; correct?

7         A.    Yes.

8         Q.    Essentially, you're the boss of

9    the department; correct?

10             MS. ZWILLING: He's not the

11             boss of the police department. I

12             think that's pretty clear.  Is there

13             something wrong with your eyes

14             Mr. Morris.

15             MR. MORRIS: Let me rephrase

16             the question. It looks like Ms.

17             Zwilling is having some sort of

18             problem.

19        Q.    Are you the boss of the Suffolk

20   County pistol licensing bureau, that

21   department?

22        A.    I am the commanding officer.

23        Q.    Like the CEO of that

24   department; correct?

```
 1                  M. KOMOROWSKI

 2        A.    I'm the commanding officer,

 3   yes.

 4        Q.    You enforce the policy of

 5   Suffolk County Police Department as it

 6   relates to the pistol license bureau;

 7   correct?

 8        A.    Yes.

 9        Q.    There's no confusion that if

10   there's a suspension it's pursuant to the

11   policy of the Suffolk County Police

12   Department of which you are tasked to

13   enforce; correct?

14        A.    It's a violation of penal law,

15   yes.

16        Q.    Correct.  And you make that

17   determination; right?

18        A.    Myself or the sergeant if he's

19   here and I'm not here.

20        Q.    Up the line you have authority

21   to do that; correct?

22        A.    Yes.

23        Q.    The authority is given to you

24   by the chief of the Suffolk County Police

25   Department on down; correct?
```

                    M. KOMOROWSKI

1

2          A.     The commissioner.

3          Q.     Yes?

4          A.     Who's a licensing officer.

5          Q.     Correct.  So you are

6   responsible as the lieutenant, the Suffolk

7   County Police Department pistol licensing

8   bureau of enforcing the policy of the

9   Suffolk County Police Department as it

10  relates to pistol licenses; correct?

11         A.     Yes.

12         Q.     Is there a written policy of

13  the Suffolk County Police Department as it

14  relates to pistol licensing?

15             MS. ZWILLING: Objection.

16         Relating to what aspect of pistol

17         licensing?  We already covered the

18         fact that there is a handbook.  So

19         let's try to focus on what is at

20         issue in this case and not general

21         matters concerning pistol licensing.

22             MR. MORRIS: Counsel, if you're

23         going to object please just object

24         and I'll try the best I can to

25         continue with this deposition, okay.

```
 1                    M. KOMOROWSKI
 2                    MS. ZWILLING: Okay.  So go
 3          ahead.
 4          Q.     Lieutenant Komorowski, did you
 5     understand the question?
 6          A.     Can you repeat it.
 7          Q.     Are there written policies that
 8     guide pistol licensing within Suffolk
 9     County Police Department?
10          A.     There is a policy and the rules
11     and procedures.
12          Q.     Okay.  Rules and procedures is
13     a handbook.  What else, if anything, is
14     there in writing?
15          A.     That's, the policy you're
16     asking for is in the rules and procedure.
17          Q.     What are those rules and
18     procedures?
19          A.     Where are three.
20          Q.     What are they, where are they,
21     we'll make it easy?
22                    MR. MORRIS: We'll call for the
23          production of the rules and
24          procedures as it relates to the
25          pistol licensing bureau.
```

```
 1                    M. KOMOROWSKI

 2              MS. ZWILLING: I believe

 3         they've already been produced, but if

 4         they're not we will produced them.

 5         Can I ask you to speak a little

 6         slower, Mr. Morris. You're speaking

 7         at probably 3 times the speed that's

 8         usually utilized in conversation and

 9         it is becoming increasingly difficult

10         to clearly hear what you're saying.

11              MR. MORRIS: Madam Court

12         reporter are you taking down

13         everything I'm saying.

14              THE REPORTER: Yeah.

15              MR. MORRIS: Are you having any

16         sort of problem doing so.

17              THE REPORTER: Not right now.

18              MS. ZWILLING: We're all

19         entitled to hear you clearly and

20         perhaps it's a transmission matter.

21         But your voice is in the last few

22         minutes speeding up in transmission

23         at this end and I would assume it's

24         also speeding up for the witness.  So

25         if could just be mindful of that, I
```

```
 1                    M. KOMOROWSKI
 2           would appreciate it.
 3                    MR. MORRIS: Of course, that's
 4           why I'm asking the court reporter.
 5           Madam Court Reporter, you have any
 6           sort of problem with my transmission.
 7                    THE REPORTER: Not right now,
 8           no.
 9                    MR. MORRIS: You'll let us know
10           if you do, right.
11                    THE REPORTER: Yeah.
12                    MR. MORRIS: Thank you so much.
13           Q.    Rules and procedures,
14     Lieutenant Komorowski as the head of the
15     Suffolk County Police Department pistol
16     licensing bureau, is there any other
17     written documentation to which you refer in
18     either revoking, approving, suspending
19     pistol licenses within the County of
20     Suffolk?
21           A.    It would be the handbook,
22     police licensing handbook and the penal
23     law.
24           Q.    When you say penal law you're
25     referring to the New York State penal law;
```

```
 1                 M. KOMOROWSKI
 2   correct?
 3        A.    (No response).
 4        Q.    Has that penal law changed
 5   since New York State Rifle and Pistol
 6   Association versus Bruen?
 7        A.    Yes.
 8        Q.    How has it changed?
 9        A.    They wrote a whole new law with
10   concealed carry.
11        Q.    As the head of the Suffolk
12   County Police Department pistol licensing
13   bureau, have you had any training since
14   Bruen to your employees?
15        A.    Training, yes.  We advise them
16   of all the new rules.
17        Q.    How did you -- sorry, I didn't
18   see. I'm sorry, what were you saying?
19        A.    We advise them of the new penal
20   rule sections.
21        Q.    How did you advise them?
22        A.    Personally in a meeting with
23   them.
24        Q.    Have you placed anything in
25   writing?
```

                    M. KOMOROWSKI

1

2        A.    We have the sensitive locations

3   in writing, we have the restricted

4   locations in writing, and also in the

5   handbook.  We have the sensitive location

6   in writing and also the restricted location

7   in writing and also in the handbook.

8        Q.    You say in the handbook.  Could

9   you just be clear to what you are

10  referring?

11       A.    The police license handbook.

12       Q.    What is the latest version of

13  the police license handbook?

14       A.    It's 200P.

15       Q.    What was the version that

16  preceded 200P of the pistol license?

17       A.    2000P, [sic] it would have been

18  2000O.

19       Q.    When did 2000P replace 2000O?

20       A.    Towards the end of 2022 after

21  the Bruen decision.

22       Q.    Who, if anyone, is responsible

23  for the training of persons underneath you

24  as lieutenant of the Suffolk County Police

25  Department licensing bureau?

                    M. KOMOROWSKI

1

2          A.      That would be me and the

3    sergeant.

4          Q.      Who is the sergeant?

5          A.      Sergeant Eric Dolan.

6          Q.      What, if anything, is done to

7    train the persons underneath you by either

8    Sergeant Eric Dolan or yourself as it

9    relates to the enforcement of the Suffolk

10   County Police Department pistol license

11   bureau policy?

12         A.      We discuss it with the

13   personnel we have, the investigators, the

14   police officers, the admin staff.

15         Q.      Aside from discuss it, is

16   anything else done to train these persons?

17         A.      They go over the law, they look

18   at the law, they are given the law.

19         Q.      When you say given the law --

20         A.      If they have any questions they

21   go over it.  They're also given the new

22   handbook which they have to review.

23         Q.      How do you ensure receipt of

24   the handbook, the persons for whom report

25   to you?

```
 1                M. KOMOROWSKI

 2        A.    Say that again.

 3        Q.    How do you -- you said you give

 4   persons who you train the new handbook;

 5   correct?

 6        A.    Yes.

 7        Q.    How do you ensure receipt of

 8   that handbook?

 9        A.    I see them reviewing it.

10        Q.    Let's put this aside.

11   Lieutenant Komorowski as Suffolk County

12   Police Department, the head of the pistol

13   licensing bureau, are you responsible for

14   Mr. Wustenhoff?

15        A.    Yes.

16        Q.    Did you give him a handbook as

17   it relates to the seizure, the revocation,

18   the granting of pistol licensing within the

19   Suffolk County Police Department?

20        A.    Yes, and he can get it online

21   too.

22        Q.    Did you give him anything else

23   in regards to training?

24        A.    Training, yes.  I brought him

25   in and we discussed everything we do,
```

1                    M. KOMOROWSKI
2     approvals, disapprovals, suspension,
3     revocations, and anything else we do
4     collecting gun, going out and checking
5     stores.
6          Q.    So, six months, is that a
7     standard of practice for the suspension of
8     pistol licenses within the Suffolk County
9     Police Department, the Suffolk County
10    pistol licensing bureau?
11         A.    Six months would be a common
12    practice for a minor infraction like this.
13    If there was something major, it would be a
14    year or more.
15         Q.    Can one get a hearing if they
16    wanted to contest the six month suspension?
17         A.    They would have to get a 78
18    hearing.
19         Q.    Who decided that everyone gets
20    suspended for six months or more?
21         A.    That was before my time here.
22         Q.    You said before your time.  Was
23    it a supervisor that gave you this
24    instruction?
25         A.    Yes.

                     M. KOMOROWSKI

1

2         Q.    Who was that supervisor?

3         A.    It was Sergeant Walsh.

4         Q.    To whom did Sergeant Walsh

5    report?

6         A.    To me.

7         Q.    You replaced Sergeant Walsh;

8    correct?

9         A.    Yes, he was here as a sergeant.

10        Q.    Understood.  When was he here

11   as the sergeant?

12        A.    2018, I believe he left in

13   2019, the end.

14        Q.    Okay.  So since 2018 that's

15   been the policy; correct?

16        A.    Yes.

17        Q.    Who did you report in 2018?

18        A.    I believe, 2018 we were

19   assigned directly under the police

20   commissioner.

21        Q.    Who was that person?

22        A.    Hart.

23        Q.    Geraldine Hart; is that right?

24        A.    Yes.

25        Q.    Was Police Commissioner

```
 1                    M. KOMOROWSKI
 2   Geraldine Hart responsible for the policy
 3   of Suffolk County Police Department?
 4        A.    Yes, as all commissioners are.
 5        Q.    Was Police Commissioner
 6   Geraldine Hart responsible for the training
 7   and enforcement of the policies of the
 8   Suffolk County Police Department?
 9        A.    I would think she would be, she
10   is the commissioner.
11        Q.    She's the boss; correct?
12        A.    Yes.
13        Q.    The CEO; right?
14        A.    She's the commissioner.
15        Q.    Commissioner is the boss and
16   the decision maker of the Suffolk County
17   Police Department; correct?
18        A.    To my knowledge.
19        Q.    And in 2018, the boss of the
20   Suffolk County Police Department instructed
21   or was responsible for Sergeant Walsh
22   enforcement of the Suffolk County Police
23   Department licensing bureau; correct?
24        A.    Yes.
25        Q.    Before you said practice.  Eric
```

1                    M. KOMOROWSKI

2      Spronz's pistol license was suspended

3      pursuant to a practice of the Suffolk

4      County Police Department, policy, New York

5      State penal law, and practice. Could you

6      clarify what, if any, practice for which

7      Mr. Spronz's pistol license was suspended?

8            A.    He violated a section of the

9      law, so we suspended him.

10           Q.    What section of the law did he

11     violate?

12           A.    265.

13           Q.    When you say 265, 265 of the

14     penal law?

15           A.    Yes, the restricted location.

16           Q.    Is there any other allegation

17     of a penal law violation by Eric Spronz for

18     which the Suffolk County Police Department

19     pistol licensing bureau suspended Eric

20     Spronz's pistol license?

21           A.    No.

22           Q.    Earlier we heard about

23     administrative staff.  Do you know to whom

24     Mr. Wustenhoff was referring when he said

25     administrative staff of the Suffolk County

```
 1                    M. KOMOROWSKI
 2     Police Department -- sorry?
 3          A.    What was the end of it.
 4          Q.    That's it?
 5          A.    We have four administrative
 6     staff that would get the information in and
 7     type up the letter of suspension.
 8          Q.    Who is responsible for those
 9     administrative staff who type up the
10     letters of suspension?
11          A.    I am.
12          Q.    And at whose direction, if any,
13     does the administrative staff of the
14     Suffolk County Police Department Suffolk
15     County pistol licensing bureau serve?
16          A.    They work for me.
17          Q.    You were responsible for the
18     oversight of the Suffolk County Police
19     Department Suffolk County pistol licensing
20     bureau; is that correct?
21          A.    I think you got it all, yes.
22          Q.    You report up the line to the
23     Suffolk County Police Department
24     commissioner who is responsible for
25     enforcing the policies of the Suffolk
```

```
 1              M. KOMOROWSKI
 2   County Police Department; is that right?
 3        A.    Yes.
 4             MR. MORRIS: Let's take a few
 5        minutes unless there's any objection.
 6             MS. ZWILLING: No objection.
 7             MR. MORRIS: Okay.  Let's take
 8        a few minutes, like five minutes is
 9        that all right Lieutenant.
10             THE WITNESS:  Yes.
11             MR. MORRIS: Thank you sir.
12             (Whereupon, a recess was
13        taken.)
14        Q.    Good afternoon Lieutenant.  Did
15   you have occasion to speak to anyone during
16   the break?
17        A.    Speak to anyone, no.  About
18   this, no.
19        Q.    Lieutenant, earlier you
20   mentioned two things, sensitive location
21   and restricted location.  Do you recall
22   that?
23        A.    Yes.
24        Q.    What is it that Eric Spronz
25   did; did he enter a sensitive location or a
```

1                    M. KOMOROWSKI
2    restricted location?  What is it exactly
3    that he did to violate the New York State
4    penal law?
5         A.    He entered a restricted
6    location.
7         Q.    What was that restricted
8    location?
9         A.    The property of another.
10        Q.    How did he enter that property?
11        A.    He walked onto it.
12        Q.    When you say walked onto,
13   walked onto what?
14        A.    The driveway.
15        Q.    What formed the basis of the
16   conclusion that he violated the penal by
17   walking onto the driveway?
18        A.    The field report.
19        Q.    Who made the determination that
20   his license should be suspended as a result
21   of walking on the driveway as articulated
22   in the field report?
23        A.    I did.
24        Q.    Earlier you said Sergeant
25   Walsh.  What is Sergeant Walsh's first

```
 1                    M. KOMOROWSKI
 2     name?
 3          A.    William.
 4          Q.    Is William Walsh still within
 5     the Suffolk County Police Department as a
 6     sergeant?
 7          A.    He is as a lieutenant.
 8          Q.    He's been promoted?
 9          A.    Yes.
10          Q.    When was he promoted?
11          A.    When he left this office.
12          Q.    When did he leave the office?
13          A.    It was between 2019 and 2020.
14          Q.    Is William Walsh still employed
15     as a lieutenant within the Suffolk County
16     Police Department?
17          A.    Yes, he is.
18          Q.    What, if any, involvement does
19     Lieutenant William Walsh have within the
20     Suffolk County Police Department Suffolk
21     County pistol licensing bureau?
22          A.    He has nothing to do with us.
23     At this point.
24          Q.    Since the six month suspension
25     policy espoused by Sergeant Walsh, have you
```

```
 1                 M. KOMOROWSKI
 2    spoken to an inspector of the Suffolk
 3    County Police Department as to the
 4    enforcement of that suspension policy?
 5         A.    Have I talked to anybody, I
 6    can't recall right now.
 7         Q.    Has the chief of the Suffolk
 8    County Police Department instructed you
 9    different from that policy as first
10    espoused and spoken to you by Sergeant
11    William Walsh as it relates to the Suffolk
12    County Police Department pistol licensing
13    bureau?
14         A.    No.
15         Q.    Has Geraldine Hart or any
16    commissioner of the Suffolk County Police
17    Department asked you to deviate from that
18    policy first discussed with you by Sergeant
19    William Walsh as it relates to the Suffolk
20    County Police Department Suffolk County
21    pistol licensing bureau?
22         A.    No.
23         Q.    Earlier you said that
24    suspensions could last longer than six
25    months of the Suffolk County pistol
```

1                    M. KOMOROWSKI

2    licensing bureau pistol license suspension;

3    is that correct?

4          A.     They could, yes.

5          Q.     How long is the longest pistol

6    license suspension of your office

7    currently?

8          A.     Currently, most likely up to

9    five years.

10         Q.     Are there any policies in the

11   Suffolk County Police Department Suffolk

12   County pistol license bureau as it relates

13   to either the engraving or the destruction

14   of firearms seized by your bureau?

15         A.     We do not do that.

16         Q.     When you say you do not do

17   that, can you please describe?

18         A.     Engrave or destroy weapons.

19                MR. MORRIS: Just give me one

20         moment. I might be done here, hold on

21         one second. Sorry about that.

22         Q.     Just want to clarify earlier,

23   did Eric Spronz ever enter a building?

24         A.     Sure he's entered buildings

25   before.

1                      M. KOMOROWSKI

2          Q.    As a result -- withdrawn.

3                You suspended Eric Spronz's

4     pistol license; correct?

5          A.    Yes.

6          Q.    Was it as a result of Eric

7     Spronz entering a building?

8          A.    No.

9          Q.    It was a result of him entering

10    a driveway; is that right?

11         A.    Private property with his gun

12    showing.

13         Q.    Can you tell us what private

14    property -- withdrawn.

15               Can you tell us what private

16    property Eric Spronz entered with his gun

17    showing?

18               MS. ZWILLING: I believe he's

19          told you several times, but he can

20          tell you again.

21               MR. MORRIS: Last time.

22         A.    He entered the private property

23    belonging to another person.

24         Q.    That private property did not

25    consist of a building, dwelling, or

1                    M. KOMOROWSKI

2     structure; correct?

3          A.    I believe there was a dwelling

4     on it.

5          Q.    But Eric Spronz did not enter

6     any sort of dwelling, building, structure,

7     anything like that?

8          A.    Correct.

9          Q.    To be clear, on the day for

10    which his pistol license was suspended by

11    the Suffolk County Police Department pistol

12    licensing bureau; correct?

13         A.    On that day, that would be the

14    27th, is that what you're talking about.

15         Q.    Yes?

16         A.    No.

17         Q.    So he didn't enter a building

18    that would result in his physical license

19    being suspended; correct?

20         A.    On the 27th, no.

21            MR. MORRIS: I have no further

22         questions and I thank you.

23            THE REPORTER: Mr. Morris, are

24         you ordering this transcript.

25            MR. MORRIS: Yes, I'm with

```
 1                    M. KOMOROWSKI
 2        Richard Young, yes.
 3             THE REPORTER: Again, Ms.
 4        Zwilling are you ordering this
 5        transcript.
 6             MS. ZWILLING: No, because I
 7        represent the witnesses so plaintiff
 8        will have to provide me with copies.
 9             THE REPORTER: Well it's
10        district federal court, so everyone
11        provides, orders their own.
12             MS. ZWILLING: Not exactly. You
13        might be thinking of the Southern
14        District. This is an Eastern District
15        case.
16             (12:31  p.m.)
17
18
19
20
21
22
23
24
25
```

```
 1                    M. KOMOROWSKI

 2            A C K N O W L E D G E M E N T

 3

 4     STATE OF NEW YORK)

 5                          :ss

 6     COUNTY OF QUEENS)

 7       I, Michael Komorowski, hereby certify

 8     that I have read the transcript of my

 9     testimony taken under oath on September 26,

10     2024, that the transcript is a true,

11     complete and correct record of what was

12     asked, answered and said during my

13     testimony under oath, and that the answers

14     on the record as given by me are true and

15     correct.

16

17

18     _____

19

20     Signed and subscribed to

21     before me, this _____ day

22     of _____, _____.

23

24     _____

25     Notary Public
```

1                    M. KOMOROWSKI

2                    I N D E X

3

WITNESS          EXAMINATION BY        PAGE

4

M. Komorowski  Mr. Morris             5

5

6

                REQUESTS FOR PRODUCTION

7

DESCRIPTION                          PAGE

8

Rules and procedures                 26

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    M. KOMOROWSKI

 2

 3              C E R T I F I C A T E

 4

 5        I, GABRIELLA TUTINO, a shorthand

 6   reporter and Notary Public within and for

 7   the State of New York, do hereby certify:

 8        That the witness(es) whose testimony

 9   is hereinbefore set forth was duly sworn

10   by me, and the foregoing transcript is a

11   true record of the testimony given by

12   such witness(es).

13        I further certify that I am not

14   related to any of the parties to this

15   action by blood or marriage, and that I

16   am in no way interested in the outcome

17   of this matter.

18

19

20

21

22

23                 GABRIELLA TUTINO

24

25
```